Harold Baer, J.
This petition to review and annul a determination of the respondent is granted with costs.
The petitioner has resided in respondent’s premises for over 20 years with her husband. Their 18-year-old son also resides with them. Until the incident here involved, the respondent admits they were all good tenants. In March, 1976, Isaías, the petitioner’s son was caught on top of the elevator car. The respondent served written charges and a hearing was held pursuant to the respondent’s regulations.
The hearing officer prepared and signed his decision on July 12, 1976.
He stated that he "believed the testimony of Isaías” that he went on top of the car to retrieve his key. The decision refers to the family’s good character and that Isaías "had no trouble with the Housing Authority or the law until this incident” and continues "Mr. Quinones testified and impressed the hearing officer as being a serious and concerned father.” The officer further stated "it is felt that after hearing the testimony of Isaías and Mr. Quinones that there is no danger of a reoccurrence of the conduct complained of.”
The hearing officer’s disposition was "probation.” Since for reasons not here relevant, the respondent was bound by the hearing officer’s disposition, that would appear to have ended the matter.
Incredibly, the hearing officer prepared and signed a second decision one week later. A comparison of the two would lead one to believe two different incidents and two different families are involved.
Gone from the second decision are the considerations of character and previous record; gone are the statements of the father’s seriousness and concern; gone the belief in Isaías’ testimony; gone the comment that climbing atop the elevator "was not a smart thing to do.” Now, Isaías is said to have created a "dangerous and hazardous condition” a phrase straight out of the cases the respondent now cites in opposi *296 tian to this petition and which appeared not at all in the first decision.
The respondent claims that the first decision was merely a preliminary draft sent to the petitioner through clerical error in the hearing officer’s office. The officer avers that also. Nowhere is there an explanation for the "clerical” error of the officer’s signature on the first decision. No clerk placed that signature on the decision. The hearing officer’s claim that the second decision represents his "mature, considered and final judgment” is not only unworthy of belief, it is unbelievable. The court cannot speculate as to the events that may have occurred during the week between the first and second decisions, but this much at least is plain: far from being a "mature and considered” judgment a comparison of the two decisions with the record of the hearing demonstrates precisely the opposite. The second decision was arbitrary and capricious in the worst sense. The second was a "hanging” decision. The deliberate and judicious considerations of character, record and demeanor found in the first are obviously deleted in the second. The firm finding in the first "that there is no danger of a reoccurrence” is replaced by language obviously chosen in an attempt to justify a disposition, eviction of the son from his parents’ home, so shocking to the conscience of the court that even were the second decision valid, the penalty would be set aside.
The second decision, however, is a nullity. The first decision was a valid one, signed by the hearing officer. To ignore it would be akin to the prosecutor sending a jury back for a second shot at an acquitted defendant. The court will not countenance such gross violation of due process (Matter of Drew v State Liq. Auth., 2 NY2d 624). Absent irregularity, illegality or fraud there is no basis for the recall of the first decision, and even were such recall to be attempted it could only be after a hearing to establish the grounds therefor. The respondent makes no claim that any such ground exists. The petition is granted. The second decision will be vacated, and the first shall stand.